UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
AT LEXINGTON

OWNERS INSURANCE COMPANY, et al.,

        Plaintiffs,

v.

SCATES BUILDERS, LLC, et al.,

        Defendants.

)
)
)
)
)
)
)
)
)
)

Civil Action No. 5:21-CV-060-CHB

**MEMORANDUM OPINION AND ORDER**

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on its own Order requiring the parties to show cause as to whether this Court should exercise jurisdiction over Plaintiffs Owners Insurance Company and Auto-Owners Insurance Company's request for declaratory relief pursuant to 28 U.S.C. § 2201. [R. 32]. Plaintiffs and Defendants Donna Simpson, Richard Simpson, Danny Knight, and Patricia Knight filed memoranda addressing the issue. [R. 34; R. 35; R. 36]. This matter is now ripe for review. For the following reasons, the Court declines to exercise its discretionary jurisdiction over Plaintiff's declaratory judgment action.

I.      **BACKGROUND**

Scates Builders, LLC ("Scates Builders"), a Kentucky limited liability company, builds and constructs residential houses as a general contractor. [R. 1, p. 3, ¶ 3]. On or about November 6, 2014, Danny and Patricia Knight entered into a contract for Scates Builders to build their home in Bourbon County, Kentucky. *Id*. at 3, ¶ 4; [R. 16, p. 4, ¶ 6]. Similarly, on or about August 14, 2017, Richard and Donna Simpson hired Scates Builders to build their house in Scott County, Kentucky. [R. 1, p. 4, ¶ 5; R. 15, p. 4, ¶ 7]. Both the Simpsons and Knights noticed certain deficiencies during and after construction, and both initiated legal actions within the state

against the construction company. [R. 1, pp. 5, 29, ¶¶ 10, 37; R. 15, pp. 4–5, ¶¶ 8–10; R. 16, p. 4, ¶¶ 7–10]. Thus, there are two separate underlying state actions for this matter, a lawsuit filed in Jessamine Circuit Court and one in Bourbon Circuit Court. [R. 15, p. 4, ¶ 12; R. 16, p. 5, ¶ 12].

Owners Insurance Company is an insurance provider incorporated in the state of Ohio with its principal offices located in Lansing, Michigan. [R. 1, p. 3, ¶ 1]. Auto-Owners Insurance Company is an insurance provider incorporated in the state of Michigan with its principal office also located in Lansing, Michigan. *Id*. ¶ 2. Both Auto-Owners and Owners Insurance Company (collectively, "AO & O") are authorized by the Kentucky Department of Insurance to conduct the business of insurance in the Commonwealth. *Id*. ¶¶ 1–2. Auto-Owners Insurance Company insures Scates Builders. *Id*. at 5, 28, ¶¶ 9, 36. Scates Builders is also an additional insured under Kevco Plumbing LLC's policy with Owners Insurance Company on the Simpsons' home. *Id*. at 14, ¶ 22.

Following the Simpsons' and Knights' (collectively known as the "Homeowners") legal actions in state court against Scates Builders, AO & O filed their Complaint seeking Declaratory Judgment from this Court on February 26, 2021. [R. 1]. Specifically, AO & O argue that they are entitled to a declaration that the insurance policies in question do not provide coverage to Scates Builders for the acts alleged by the Homeowners.[1] *Id*. at 14, 28, 38, ¶¶ 21, 35, 48. The Homeowners filed answers with counterclaims to AO & O's Complaint. [R. 15; R. 16].

On August 10, 2021, AO & O filed a Motion to Amend/Correct Complaint, attempting to add a new Declaratory Judgment Action against a new set of parties, Michael and Jennifer Castle. [R. 21]. The Castles entered into an agreement on or about December 2, 2017, for Scates

---

[1] In their Complaint, AO & O also argue that the relevant policies do not provide individual coverage to J. Jeffrey Scates and/or Theresa Weaks Scates. *See* [R. 1, pp. 14, 28, 38, ¶¶ 21, 35, 48].

Builders to construct a private home in Jessamine County, Kentucky. [R. 21–1, p. 3, ¶ 5].[2] In the Motion, AO & O argue that the "insurance policy issued to Scates Builders does not provide liability insurance coverage to Scates Builders for the matters complained of by the Castles." *Id*. at 4, ¶ 8. The Homeowners filed a response arguing that AO & O's Motion is premature and not calculated to promote judicial economy. [R. 24; R. 25]. AO & O replied, [R. 29].

The next day, Auto-Owners filed a Motion for Partial Summary Judgment directed at the Knights arguing that it is "entitled to a declaration that it does not owe either a defense or indemnification to Scates under its Commercial General Liability Coverage . . . ." [R. 22–1, p. 1]. The Knights filed a Response in Opposition to AO & O's Motion for Partial Summary Judgment, [R. 26], and Auto-Owners replied, [R. 30].

Finally, on August 20, 2021, AO & O filed a Motion to Bifurcate Bad Faith Claims and to Hold Discovery Regarding Same in Abeyance. [R. 23]. The Homeowners filed their Responses, [R. 27; R. 28], and AO & O replied, [R. 31].

On November 5, 2021, this Court ordered the parties to address the *Grand Trunk* factors with respect to the requested relief and show cause as to whether this Court should exercise jurisdiction over AO & O's request for declaratory relief pursuant to 28 U.S.C. § 2201. [R. 32]. Subsequently, this Court filed an order, [R. 33], denying without prejudice AO & O's Motion to Amend/Correct Complaint, [R. 21], Motion to Bifurcate, [R. 23], and Auto-Owners' Motion for Partial Summary Judgment, [R. 22]. On November 23, 2021, AO & O filed their memorandum addressing the *Grand Trunk* factors, [R. 34]. The Homeowners filed theirs the next day. [R. 35; R. 36].

---

[2] The Castles are represented by Billings Law Firm, the same firm representing the Homeowners. AO & O certified that a copy of the Motion to Amend Complaint was served to the Billings Law Firm on August 10, 2021. [R. 21, p. 3].

On January 11, 2022, Scates Builders filed in this Court a Notice of filing a voluntary petition under the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Kentucky. [R. 37]. As a result, the Court stayed the action, [R. 40]. On February 25, 2022, the Parties filed a Proposed Agreed Order to Lift Stay advising the Court that the Bankruptcy Court had granted relief from the automatic stay. [R. 41]. The Court filed an Order Lifting Stay a few days later. [R. 42]. Having lifted the stay, this matter is now ripe for the Court's consideration.

## II.    THE PRESENT ACTION

Before analyzing the *Grand Trunk* factors, the Court must clarify the scope of the declaratory judgment requested in this case. To do so, the Court will briefly discuss the Homeowners' allegations and some of the relevant insurance coverage provisions.

On December 24, 2020, the Simpsons filed a Complaint in the Jessamine Circuit Court against Scates Builders for the faulty construction of their home. [R. 1–2, Ex. B]. In the Complaint, the Simpsons alleged multiple claims: Breach of Contract (Count One); Breach of Warranty (Count Two); Misrepresentation/Fraud (Count Three); Negligent Misrepresentation (Count Four); Fraud in the Inducement (Count Five); Breach of Duty of Good Faith and Fair Dealing (Count Six); Unjust Enrichment (Count Seven); Violation of Kentucky Consumer Protection Act (Count Eight); Negligence / Negligence Per Se (Count Nine); Punitive Damages (Count Ten); Violation of Kentucky Building Code (Count Eleven); Attorneys Fees, Costs, and Expenses (Count Twelve); Vicarious Liability (Count Thirteen); Negligent Supervision (Count Fourteen); Fraud by Omission (Count Fifteen); and Civil Conspiracy (Count Sixteen). *Id*. at 6–19, ¶¶ 33–133.

The Knights filed a lawsuit against Scates Builders on June 4, 2019 in Bourbon County Circuit Court. [R. 16, p. 4, ¶ 10]. Scates Builders enforced its right to arbitration. *Id.*, ¶ 11. In the Demand for Arbitration, the Knights alleged multiple claims: Breach of Contract (Count One); Breach of Warranties (Count Two); Negligent Misrepresentation (Count Three); Negligence (Count Four); Violations of Building Code (Count Five); Negligence Per Se (Count Six); Unjust Enrichment (Count Seven); Attorney's Fees and Costs (Count Eight); Vicarious Liability (Count Nine); Negligent Supervision (Count Ten); Fraud by Omission (Count Eleven); Punitive Damages (Count Twelve); and Reservation of Claims (Count Thirteen). [R. 1-5, Ex. E at 6–15, ¶¶ 35–98].[3] The arbitrator awarded damages to the Knights, [R. 36–1, Ex. A, p. 16], and the Bourbon Circuit Court entered judgement confirming the arbitration award. *Id.* at 9. As of November 24, 2021, Knights and Scates Builders were in the process of post-judgment discovery in the state court. [R. 36, p. 2].

In response to the Simpsons' Complaint and the Knights' Demand for Arbitration, AO & O filed this action requesting a judgment declaring that, under the relevant insurance policies, AO & O owe no coverage and no duties to defend or indemnify Scates Builders as to the Homeowners' claims levied against the construction company.[4] [R. 1, pp. 38–39, ¶¶ 1–3]. Specifically, AO & O argue that the relevant policies exclude coverage of any damage to real property arising out of operations performed by Scates Builders (or a hired subcontractor). *Id.* at 12, 25, 36, ¶¶ 14, 27, 41. Further, AO & O claim that the policies issued only provide coverage for property damage caused by an "occurrence," and the claims alleged by the Homeowners do

---

[3] Neither Auto-Owners nor Owners Insurance was named as a defendant in the Simpsons' Complaint or the Knights' Demand for Arbitration. *See* [R. 1–2, Ex. B; R. 1–5, Ex. E].

[4] Importantly, AO & O's Complaint seeks a declaration specifically that Auto-Owners Insurance Company owes no coverage as to the claims from the Homeowners against Scates Builders, Jeffrey Scates, and Theresa Scates under Scates Builders' policy. [R. 1, pp. 38–39, ¶¶ 1–3]. Owners Insurance Company seeks a declaration that it owes no coverage as to the claims of the Simpsons against Scates Builders, Jeffrey Scates, and Theresa Scates as additional insureds under Owner Insurance Company's policy with Kevco Plumbing LLC. *Id.*

not meet the definition of an "occurrence" as defined in the policy. *Id.* at 13–14, 27, 38, ¶¶ 19, 32, 46. Finally, AO & O argue that the policies do not provide liability insurance for breach of contract, fraudulent acts, or intentional acts complained against Scates Builders. *Id.* at 14, 27–28, 38, ¶¶ 20, 33, 47. Thus, and while not determined in this order, the critical question pertaining to this matter is whether the allegations in the Homeowners' state court complaint and Demand for Arbitration trigger coverage by AO & O.[5]

Having discerned the scope of AO & O's requested action, the Court turns to analyzing the *Grand Trunk* factors.

## III. ANALYSIS

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a) (emphasis added). The Act thus "confer[s] on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). Generally, courts should only exercise this discretionary jurisdiction when doing so would advance the interests of justice or preserve resources of the parties. *Grange Mut. Cas. Co. v. Safeco Ins. Co. of Am.*, 565 F. Supp.2d 779, 785 (E.D. Ky. 2008) (citing *Panhandle E. Pipe Line Co. v. Mich. Consol. Gas Co.*, 177 F.2d 942, 944 (6th Cir. 1949)) (other citations omitted). Simply stated, "[d]istrict courts must exercise this discretion cautiously." *Id.*; *see also W. World Ins. Co. v. Hoey*, 773 F.3d 755, 759 (6th Cir. 2014) (quoting *Wilton*, 515 U.S. at 289) ("That discretion, however, must not be unguided. Rather, 'sound

---

[5] For example, a relevant question is whether the state court claims of negligent workmanship (and potentially ancillary damages) against Scates Builders qualify an "occurrence" under the insurance policy, thereby triggering coverage.

administration of the Declaratory Judgment Act calls for the exercise of judicial discretion, hardened by experience into rule.'") (internal quotations omitted).

The Sixth Circuit's *Grand Trunk* factors guide district courts when deciding whether to exercise jurisdiction under Section 2201. These factors are:

1. Whether the declaratory action would settle the controversy;
2. Whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue;
3. Whether the declaratory remedy is being used merely for the purpose of procedural fencing or to provide an arena for a race for res judicata;
4. Whether the use of declaratory action would increase friction between our federal and state courts and improperly encroach on state jurisdiction; and
5. Whether there is an alternative remedy which is better or more effective.

*Grand Trunk W. R.R. Co. v. Consol. Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984). The Sixth Circuit has noted that these factors are not given any particular weight, but are meant to focus a district court on three things: efficiency, fairness, and federalism. *Hoey*, 773 F.3d at 759 (internal citations omitted). Therefore, "the essential question is always whether a district court has taken a good look at the issue and engaged in a reasonable analysis of whether issuing a declaration would be useful and fair." *Id.*

### A. Factors One and Two: Will the Action Settle the Controversy and Clarify the Legal Relations?

The first two factors are closely related and therefore often considered together. *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 557 (6th Cir. 2008). The Sixth Circuit has developed split lines of precedent concerning these two factors, and each will be discussed in turn below. The Sixth Circuit explained that the incongruence between each line of cases results from the "different factual scenarios" presented. *Id.* at 555.

The first *Grand Trunk* factor asks, "whether the declaratory action would settle the controversy." 746 F.2d at 326. In the Sixth Circuit, one line of cases has held that this factor is

met if the declaratory action can settle the insurance coverage controversy presented, even though it will not resolve the underlying state court action. *See Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448, 454 (6th Cir. 2003) (quoting *Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964, 968 (6th Cir. 2000)) ("[W]hile the declaratory judgment would not end the dispute . . . it would settle the controversy regarding the scope of insurance coverage issued by Northland to Caliu, and whether Northland had a duty to defend the insureds."). The rationale for this line of cases is often that "a declaratory judgment is proper if it will only have to decide purely legal questions or engage in fact-finding that does not affect the parties in the underlying action." *United Specialty Ins. Co. v. Cole's Place, Inc.*, No. 3:17-CV-326-TBR, 2018 WL 1914731, at *4 (W.D. Ky. Apr. 23, 2018), *aff'd* 936 F.3d 386 (6th Cir. 2019) (citation omitted).

The second line of cases has held that while a declaratory action might clarify the legal relationship between the parties, it ultimately will fail factor one analysis if it fails to settle the ultimate controversy between the parties that is ongoing in state court. *Travelers Indem. Co. v. Bowling Green Prof'l Assoc., PLC*, 495 F.3d 266, 272 (6th Cir. 2007) ("Granting the declaratory relief sought by Evanston and Travelers settles the scope of insurance coverage under the respective policies and clarifies their obligation to defend Bowling Green in the state court action, but it does nothing to . . . 'clarify the legal relation' between the other parties."). These cases often involve factual disputes that are also at issue in the state court, or instances where the state court plaintiff has not been joined. *Cole's Place*, 2018 WL 1914731, at *4; *Encompass Indem. Co. v. Gray*, 434 F. Supp.3d 560, 570–71 (W.D. Ky. 2020).

As with the first factor, Sixth Circuit precedent on *Grand Trunk* factor two is similarly conflicting. A split has developed among the Circuit's jurisprudence "concerning whether the district court decision must only clarify the legal relations presented in the declaratory judgment

action or whether it must also clarify the legal relations in the underlying state action." *Flowers*, 513 F.3d at 557 (citations omitted). In *Flowers*, the Sixth Circuit found "the former line of precedent to be more persuasive than the latter" holding that for a declaratory judgment to satisfy factor two, it must simply provide a final resolution of the discrete dispute presented and need not settle all the relations in state court. *Id.* at 557 (citations omitted); *but see Travelers*, 495 F.3d at 272; *Bituminous Cas. Corp. v. J & L Lumber Co.*, 373 F.3d 807, 814 (6th Cir. 2004) ("[A]lthough a declaratory judgment would clarify the legal relationship between Bituminous and J & L pursuant to the insurance contracts, the judgment would not clarify the legal relationship between Shields and J & L in the underlying state action."). In more recent decisions, the Sixth Circuit again affirmed the lower courts' exercise of jurisdiction, finding no abuse of discretion as to the second *Grand Trunk* factor where the declaratory action clarified the legal relationships of the parties to the declaratory action, but not the state court litigation. *See United Specialty Ins. Co. v. Cole's Place, Inc.*, 936 F.3d 386, 398–99 (6th Cir. 2019).

Accordingly, the Court analyzes the first two *Grand Trunk* factors recognizing the competing policy considerations and the need for a case-specific inquiry.

The Court is guided, in part, by a factually similar case in *Frankenmuth Mut. Ins. Co. v. Balis Campbell, Inc.*, 510 F.Supp.3d 482 (E.D. Ky. 2020), which analyzed the Sixth Circuit caselaw on the issue. There, an insurance provider—that was also not a defendant in the underlying state court action—sought a declaratory judgment that it had no duty to defend the insured construction company against claims of shoddy construction. *Id.* at 486-87, 491. The insurance provider argued that *Grand Trunk* factor one favored the district court exercising jurisdiction because the insurance coverage question was "purely a legal one." *Id.* The *Frankenmuth* court agreed. *Id.* at 492. According to the court, "because it is only determining the obligation to defend

9

under the CGL/umbrella policy, it would only need to look to the allegations in the state court complaint and terms of the policy." *Id.* (citing *United Specialty*, 936 F.3d at 400). Further, the court was influenced by the fact that there was "no pending state proceeding in which the coverage issue, or a question of fact or of state law relevant to the coverage issue, [was] being litigated." *Id.* (internal citations omitted). As a result, factor one slightly favored exercising jurisdiction. *Id.* As to factor two, the *Frankemuth* court believed that the requested declaratory judgment would resolve certain issues before it, namely whether there is any coverage under the relevant policy. *Id.* at 493. Such resolution, according to the court, would clarify the certain legal relations at issue even though the rights of the parties in the state-court litigation would remain unresolved. *Id.* Thus, the *Frankenmuth* Court determined that factor two also slightly weighed in favor of exercising jurisdiction. *Id.*

For *Grand Trunk* factors one and two, AO & O argue that "this action will settle the coverage issue for all parties." [R. 34, p. 3]. They contend, "there is no discovery or fact issue in state court or the separate arbitration that is needed to resolve the declaratory judgment action." [*Id.* at 2. However, AO & O concede that this action would not resolve the underlying state court or arbitration action. *Id.* at 3. Notwithstanding, AO & O argue that factors one and two favor the Court exercising jurisdiction because the issue of coverage is not a question being litigated in the state court or arbitration, and the Court's determination on such issues "will settle the legal relationship between the insurer and insured . . . ." *Id.* The Homeowners[6] point out that this action will not settle the underlying controversy. [R. 35, p. 1; R. 36, p. 1]. Furthermore, the Simpsons argue that the Court "risk[s] the possibility of inconsistent factual findings and judgment" if it exercises jurisdiction for this action. [R. 35, p. 2]. This is true because, they

---

[6] The Simpsons and Knights filed separate memorandum that greatly overlap.

argue, the coverage question will turn on the meaning of such terms as "accident" and "occurrence," requiring the Court to analyze the "fortuity doctrine" which potentially involves fact-based questions of "intent" and "control." *Id.* Finally, the Homeowners argue that Kentucky courts are equally able to resolve insurance contract issues, and because "the various claimants' claims [are] in different stages[,] . . . there are significant issues of timing which are unique to each claim." [R. 35, p. 2; R. 36, p. 3].

Here, the Court finds parallels with the *Frankenmuth* court, but also come distinctions. The issue presented by AO & O's Complaint is whether, based off the Homeowners' allegations, it is required to provide liability coverage. *See* [R. 1]. To answer such question, the Court would *likely* only need to look to the allegations in the state court complaint and Demand for Arbitration, and the terms of the policies. *See United Specialty*, 936 F.3d at 400. In other words, it is *unlikely* the Court would need to make factual findings[7] to resolve the insurance coverage question because such question is arguably "purely a legal one." *Frankenmuth*, 510 F.Supp.3d at 491–92; *see also James Graham Brown Found., Inc. v. St. Paul Fire & Marine Ins. Co.*, 814 S.W. 2d 273, 279 (Ky. 1991) (explaining that the insurer's duty to defend is triggered if there is any allegation in the complaint that could possibly fall within the scope of the policy's coverage).

The Court notes, however, that the potential for fact-based questions of state law arising in this case is greater than in *Frankenmuth.* As argued by Auto-Owners in its Motion for Partial

---

[7] The Court purposely qualifies this statement. The policies at issue define "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." [R. 1, p. 10, 21, 34]. Insurance case law instructs courts to analyze the "accident" question "according to the doctrine of fortuity: 1) whether the insured intended the event to occur; and 2) whether the event was a 'chance event beyond the control of the insured.'" *Martin/Elias Properties, LLC v. Acuity*, 544 S.W.3d 639, 643 (Ky. 2018) (quoting *Cincinnati Ins. Co. v. Motorists Mut. Ins. Co.*, 306 S.W.3d 69, 76 (Ky. 2010), *as corrected* (July 19, 2011)). Under this analysis, "[i]f the insured did not intend the event or result to occur, and the event or result that occurred was a chance event beyond the control of the insured, then CGL coverage covering *accidents* will apply to the benefit of the insured." *Id.* Thus, the coverage question, to some extent, depends on "two aspects of fortuity: intent and control," and these two considerations "potentially involve fact-based inquiries." *Id.* at 642; *Frankenmuth*, 510 F. Supp.3d at 491–92.

Summary Judgment, [R. 22-1, pp. 12-16], and by the Homeowners, [R. 35, p. 2], the coverage question turns, in part, on the issue of whether Scates Builders' alleged conduct qualifies as an "occurrence" under the policy. AO & O argue this is a clear-cut question of law. [R. 34, p. 2]; *see also* [R. 22-1, p. 12 (citing *Cincinnati Ins. Co. v. Motorists Mut. Ins. Co.*, 306 S.W.3d 69, 76 (Ky. 2010), *as corrected* (July 19, 2011); *Martin/Elias Properties, LLC v. Acuity*, 544 S.W.3d 639, 642–43 (Ky. 2018))]. As this Court noted in *Frankenmuth*, 510 F. Supp. 3d at 492, n. 5, though the garden variety negligent construction case likely does not constitute an "accident" or "occurrence" under the policy, Kentucky law is less clear where, for instance, the contractor's work may have been affected by a defective product beyond the insured's control. *See Arrowood Indemnity Co. v. The Drees Co., et al.*, No. 14-169-DLB, 2015 WL 136107 (E.D. Ky. January 9, 2015); *Westfield Ins. Co., v. B.H. Green & Son, Inc.*, No. 5:11-cv-010-TBR, 2013 WL 5278243 (W.D. Ky. Sept. 18, 2013). In such cases, and as part of analyzing the relevant fortuity doctrine, fact issues of "intent" and "control" may be implicated. Indeed, the court in *Cincinnati Ins.* noted, "claims of faulty workmanship, *standing alone*, are not 'occurrences' under CGL policies." 306 S.W.2d at 73 (emphasis added). But in this case, the Homeowners brought a multitude of claims against Scates, including vicarious liability, negligent supervision, and allegations that subcontractors used "substandard or inappropriate materials." [R. 1-2, pp. 16-18 (Simpsons Complaint); R. 1-5, pp. 10-14 (Knights Demand for Arbitration)]. Such claims have the potential to implicate fact-based inquiries in resolving the coverage questions and militate against exercising jurisdiction.

Although a decision by this Court would not clarify all the legal relationships at issue, it would likely neither "create any confusion about the resolution of those issues" nor "confuse the state court's analysis of [the] liability issues." *Flowers*, 513 F.3d at 557. Because, unlike *Frankenmuth*, there is some potential that conflicting factual findings might emerge between this

Court and the state courts, this factor, on balance, only slightly favors exercising jurisdiction. 510 F.Supp.3d at 493.

Factor two also slightly favors exercising jurisdiction. "Although the declaratory judgment will 'not resolve the relative rights of all parties in the state court litigation, it does determine whether the insurer must continue defending the insured party[.]" *United Specialty*, 936 F.3d at 399. The underlying state issues focus on whether Scates Builders committed a breach of contract or warranty, engaged in fraud, acted negligently, acted in bad faith, etc. *See* [R. 1–2; R. 1–5]. However, none of these issues are dependent on the Court's resolution of the coverage issue. *See Frankenmuth*, 510 F. Supp.3d at 493. Thus, resolution of the coverage question will not likely complicate or confuse the state court liability issues. *Flowers*, 513 F.3d at 557. Accordingly, the Court finds, because this action would clarify the legal relations of the parties in this case, factor two weighs slightly in favor of exercising jurisdiction.

## B. Factor Three: Is this a Race for Res Judicata?

The third *Grand Trunk* factor asks whether the declaratory remedy is being used for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata." 746 F.2d at 326 (internal citations omitted). "The question is . . . whether the declaratory [judgment] plaintiff[s] ha[ve] filed in an attempt to get [their] choice of forum by filing first." *AmSouth Bank v. Dale*, 386 F.3d 763, 789 (6th Cir. 2004). The Sixth Circuit advises that courts should be "reluctant to impute an improper motive to a plaintiff where there is no evidence of such in the record." *Flowers*, 513 F.3d at 558 (citations omitted). Typically, "[f]iling a declaratory judgment action in a forum separate from the underlying litigation is not considered improper by itself." *Massachusetts Bay Ins. Co. v. Christian Funeral Directors, Inc.*, 759 F. App'x 431, 439 (6th Cir. 2018) (citing *Flowers*, 513 F.3d at 558). The Sixth Circuit has given a declaratory judgment

plaintiff the benefit of the doubt that no improper motive fueled the filing of its action where it was filed *after* the state court litigation has begun. *See Bituminous*, 373 F.3d at 814. Nonetheless, this factor can "preclude jurisdiction for 'declaratory plaintiffs who file their suits mere days or weeks before the coercive suits filed by a "natural plaintiff" and who seem to have done so for the purpose of acquiring a favorable forum.'" *Flowers*, 513 F.3d at 558 (quoting *Amsouth Bank*, 386 F.3d at 788).

Here, AO & O note that they filed this action in February 2021, well after the state court action and separate arbitration had already been filed. [R. 34, p. 4]. AO & O also argue that this factor favors the Court exercising its jurisdiction because "no other forum exists where coverage as to all the parties to this action may be determined under the policy at issue." *Id*. In contrast, the Simpsons describe AO & O's actions as "procedural gamesmanship" that weighs against exercising jurisdiction. [R. 35, p. 3]. While the Knights argue that this factor is "at best neutral on the question of discretionary jurisdiction," they also contend that the Court's ruling on the coverage question will "create inefficiencies and confusion for the litigants and the [C]ourt given the differing statuses of the state court action and the different underlying facts." [R. 36, p. 4].

The Court believes this factor neither favors nor disfavors exercising jurisdiction. The Sixth Circuit has noted that "this factor should be afforded little weight in cases where . . . there is no evidence of procedural fencing." *Massachusetts Bay*, 759 F. App'x at 439 (citing *Travelers*, 495 F.3d at 272). Here, AO & O filed the declaratory action well after the state court action and arbitration had been initiated. Though AO & O were aware of the pending state court proceedings and could have filed this action in state court, they were not obligated to do so. *See Flowers*, 513 F.3d at 558 ("While this action may have been an attempt to preempt an issue which the state court would eventually consider, the Declaratory Judgment Act gives Scottsdale

the right to do precisely that . . . . "). The Court finds no evidence of an improper motive behind

AO & O's filing, and therefore, affords this factor little weight in the overall balancing. *See*

*Massachusetts Bay*, 759 F. App'x at 439. Thus, the third factor is neutral.

### C.  Factor Four: Will this Action Increase Friction Between State and Federal Courts?

The fourth *Grand Trunk* factor examines if a declaratory judgment would increase

friction between the federal and state courts. 746 F.2d at 326. The Supreme Court has

admonished that a "district court might be indulging in '[g]ratuitous interference' if it permit[s]

the federal declaratory action to proceed" simultaneously with a state court action involving the

same parties and state law issues. *Wilton*, 515 U.S. at 283 (quoting *Brillhart v. Excess Ins. Co. of

Am.*, 316 U.S. 491, 495 (1942)). "However, 'the mere existence of a state court proceeding is not

determinative of improper federal encroachment upon state jurisdiction.'" *Flowers*, 513 F.3d at

560 (quoting *Allstate Ins. Co. v. Green*, 825 F.2d at 1061, 1067 (6th Cir. 1987)). Thus, to

determine whether the exercise of jurisdiction would increase friction between federal and state

courts, the Sixth Circuit has identified three additional sub-factors to consider:

1.  Whether the underlying factual issues are important to an informed resolution
    of the case;
2.  Whether the state trial court is in a better position to evaluate those factual
    issues than is the federal court;
3.  Whether there is a close nexus between the underlying factual and legal issues
    and state law and/or public policy, or whether federal common or statutory
    law dictates a resolution of the declaratory action.

*Id.* (quoting *Bituminous*, 373 F.3d at 814–15).

#### 1.  Sub-Factor One: Are the Underlying Factual Issues Important to an Informed Resolution of the Case?

The first sub-factor "focuses on whether the state court's resolution of the factual issues

in the case is necessary for the district court's resolution of the declaratory judgment action." *Id.*

District courts have declined to exercise jurisdiction when the "coverage determination involves

15

policy exclusions requiring determinations of fact that are involved in the underlying state-court claims." *Am. Nat'l Prop. & Cas. Co. v. Wilson*, No. 18-116-DLB-CJS, 2019 WL 1876797, at *7 (E.D. Ky. Apr. 26, 2019). But "[w]hen the liability issues central to the state court proceeding are distinct from those central to the federal court proceeding, federal jurisdiction is appropriate[.]" *Grange*, 565 F. Supp.2d at 789.

AO & O argue that "there are no underlying factual issues this Court requires from the state court or arbitration in order for it to render a declaratory judgment in this action." [R. 34, p. 4]. The Homeowners contend that the underlying factual issues are important to the resolution of this case. [R. 35, p. 4; R. 36, p. 4]. Specifically, they believe that the "fact that some of [these] factual determinations may involve the intent, acts, or liability of other persons or parties not present in one or both actions" favors the Court declining to exercise jurisdiction. [R. 35, p. 4; R. 36, p. 4]. Both parties make persuasive arguments on this point. While the Court can typically determine whether the Homeowners' allegations trigger coverage by analyzing the terms of the policy and the allegations in the underlying complaint, *see Frankenmuth*, 510 F.Supp.3d at 496; *see also James Graham Brown Found*, 814 S.W.2d at 279, given the particular claims in the underlying actions, this may not be the "typical" case. *See supra,* Section III.A. Although the coverage question normally does not depend on the factual findings of the state court, some potential exists that this case falls outside the routine. Because that potential remains, the Court finds this subfactor weighs slightly against exercising jurisdiction.

## 2.   Sub-Factor Two: Is the State Court in a Better Position to Evaluate Those Factual Issues?

This sub-factor examines "which court, federal or state, is in a better position to resolve the issues in the declaratory action." *Flowers*, 513 F.3d at 560. Generally, "Kentucky courts are in the better position to apply and interpret its law on these issues." *Travelers*, 495 F.3d at 272.

Courts may also consider whether state court decisions have addressed the issue in question. *Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964, 968–69 (6th Cir. 2000). Such an inquiry is appropriate because ruling on an unresolved question of state law may "increase the friction between our federal and state courts." *Id.* at 969. That said, "when an insurance company is not a party to the state action, and neither the scope of insurance coverage nor the obligation to defend is before the state court, a decision by the district court on these issues would not offend principles of comity." *Flowers*, 513 F.3d at 560 (quoting *Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448, 454 (6th Cir. 2003)) (internal quotations and alterations omitted). Furthermore, this sub-factor can be satisfied if the court is presented with a pure question of law that does not involve any novel issues. *Cole's Place, Inc.*, 2018 WL 1914731, at *8 (citation omitted).

With regard to this sub-factor, AO & O contend "that the state court does not have an advantage over the federal court to evaluate factual issues as there are no factual issues and no single state forum could have jurisdiction over all of the issues and parties." [R. 34, p. 4]. The Homeowners disagree, noting that the "state court is already involved in the case and has issued written and oral opinions on the litigation," and therefore, "the state court is in a better position to build upon [the] record and decide insurance issues in the context of the litigation." [R. 35, p. 4; R. 36, p. 5].

It is true that "when an insurance company '[is] not a party to the state court action, and neither the scope of insurance coverage nor the obligation to defend [is] before the state court . . . a decision by the district court on these issues would not offend principles of comity.'" *Flowers*, 513 F.3d at 560 (quoting *Northland*, 327 F.3d at 454). But still, this case presents *only* questions of state law, and though the questions do not necessarily present "novel" issues, the

17

Court, were it to exercise jurisdiction, risks the potential for unnecessary friction with the state court. *See Certain Underwriters at Lloyd's, London v. Abundance Coal, Inc.*, No. CIV. 12-39-ART, 2012 WL 3067579, at *4 (E.D. Ky. July 27, 2012) ("Because this case involves only questions of state law, this sub-factor indicates the possibility of friction with the state court."). Further, to the extent factual issues are implicated in resolving the coverage question, the state court is in a better position to resolve those issues. Thus, the Court finds that this factor slightly weighs against exercising jurisdiction, especially since the "general presumption" is that state courts are in a better position to decide state law questions. *United Specialty*, 936 F.3d at 401; *see also Travelers*, 495 F.3d at 272.

### 3. Sub-Factor Three: Is There a Close Nexus Between the Underlying Factual and Legal Issues and State Law/Policies?

The third sub-factor focuses on "whether the issue in the federal action implicates state policies, and is, thus, more appropriately considered in state court." *Flowers,* 513 F.3d at 560. The Sixth Circuit recognizes that Kentucky state courts are better able to resolve issues of insurance contract interpretation because the Kentucky courts are more familiar with Kentucky law, which the state, obviously, utilizes to regulate insurance companies for the benefit of its citizens. *Id.* Further, the Sixth Circuit is cognizant of the fact that Kentucky courts are "best situated to identify and enforce the public policies that form the foundation of such regulation." *Id.* at 561 (quoting *Bituminous*, 373 F.3d at 815); *see also Travelers*, 495 F.3d at 273.

AO & O argue that "this Court can certainly address whether the homeowners' allegations of defective work triggers [sic] AO & O CGL policy," but acknowledge that federal jurisprudence has in the past indicated that such matters should be left to state courts. [R. 34, p. 5]. The Court agrees with AO & O's latter sentiments. The development of case law concerning

insurance disputes in Kentucky is better left to its state courts, and since the issues presented here are purely of state law, this sub-factor counsels against the Court exercising jurisdiction.

After considering each sub-factor, the Court finds that the fourth factor weighs against the exercise of jurisdiction.

### D. Factor Five: Is There an Available Alternative Remedy?

The fifth and final *Grand Trunk* factor asks, "whether there is an alternative remedy which is better or more effective." 746 F.2d at 326. If so, this Court should decline to exercise jurisdiction. *Id.* ("Courts deny declaratory relief if an alternative remedy is better or more effective.").

AO & O argue that "[i]f jurisdiction is not exercised by this Court, AO & O will be required to file several actions for declaratory judgment in state courts," and therefore, "efficiency, fairness, and federalism" will be undermined. [R. 34, p. 6]. To prevent this, AO & O assert that the Court should exercise jurisdiction and "entertain the common coverage issues in a single action." *Id*. The Homeowners argue that "[r]esolution of the coverage issue in the state court action would be more effective because that court is already familiar with the case and would allow the state court to apply its own law." [R. 35, p. 5; R. 36, p. 5]. The Simpsons supplement this argument by noting that the "state court also presents a superior venue because any factual determinations which go to the question of coverage, such as the intent and chance elements of the fortuity doctrine, will be similar to and involve testimony from most the same witnesses and parties." [R. 35, p. 5].

In many cases involving similar insurance coverage issues, the Sixth Circuit has held that an alternative remedy is available through a declaratory judgment under state law or an indemnity action in the state court at the conclusion of the liability proceedings. *See, e.g., United*

*Specialty*, 936 F.3d at 401–02; *Massachusetts Bay*, 759 Fed. App'x at 441–42; *Travelers*, 495 F.3d at 273; *Bituminous*, 373 F.3d at 816–17. Although these alternative remedies exist, "it is not clear whether such alternative remedies are *better or more effective* than a federal declaratory action." *Flowers*, 513 F.3d at 562. The Sixth Circuit has held that "our inquiry on this factor must be fact specific, involving consideration of the whole package of options available to the federal declaratory plaintiff." *Id.*

*Flowers* involved an insurer seeking a declaratory judgment that it had no duty to indemnify a therapist employed by the insured, a mental health services provider, in a state emotional distress suit stemming from the therapist's sexual affair with a patient. *Id*. at 550–51. The Sixth Circuit recognized that a state declaratory action in such case would have been better because "Kentucky courts are in superior position to resolve undecided questions of state law such as whether a therapist's sexual activities with his client are outside the scope of his employment." *Id*. at 562. Notably, however, the Sixth Circuit also acknowledged that Kentucky law provided clear guidance on the issue, and therefore, a federal declaratory action was not "clearly inferior." *Id*. Moreover, the Sixth Circuit noted that "the remedy of an indemnity action would not have been a superior alternative" because even if the insurer joined the state court action, it would still be required to wait until the liability issues were resolved before determining its obligations to the therapist. *Id*. "Such a delayed alternative would be worse, not better, than seeking a federal declaratory judgment." *Id*.

However, the Sixth Circuit seemingly contradicted the holding in *Flowers* with its opinion in *United Specialty*. In *United Specialty*, the Sixth Circuit upheld the district court's determination that this factor favored against exercising jurisdiction because a state court declaratory action "would provide [the insurance company] with the same remedy it seeks in

federal court, [and] the state remedy has the advantage of allowing the state court to apply its own law." 936 F.3d at 401. The Sixth Circuit focused on the unique ability of a state court to apply state law. *Id*.

This Court follows the Sixth Circuit's more recent declaration in *United Specialty*. AO & O's primary factor five argument is rooted in efficiency. AO & O fear that they will have to file several actions for declaratory judgment in state courts sitting in different counties. [R. 34, p. 6]. The Court recognizes that a desire to avoid multiple lawsuits in multiple courts is a legitimate reason pursue federal court. However, AO & O's concern is overstated. First, AO & O's state-court litigation would involve, at most, two fronts—Jessamine and Bourbon Circuit Courts.[8] AO & O's efficiency arguments fail to account for the counter arguments by the Knights and Simpsons, who resist having to "engage in litigation on two fronts" when all issues could be addressed in the underlying state court actions. [R. 35, p. 7; R. 36, p. 7].

Furthermore, a declaratory relief action in the state court is a better alternative to this federal declaratory action. As mentioned above, the coverage issue, including what may constitute as an "occurrence" under the policy, is a question of state law. *See Martin/Elias Properties, LLC v. Acuity*, 544 S.W.3d 639, 643 (Ky. 2018) (quoting *Cincinnati Ins. Co. v. Motorists Mut. Ins. Co.*, 306 S.W.3d 69, 76 (Ky. 2010), *as corrected* (July 19, 2011)). Regardless of the fact that Kentucky law may be clear on the issue, declining jurisdiction has the advantage of allowing Kentucky courts to interpret state law and to apply it to the facts of this case. *See Flowers*, 513 F.3d at 562. Moreover, the Court is not convinced one action in federal court that involves different state-court plaintiffs is automatically more efficient, especially where the

---

[8] Though AO & O filed a Motion to Amend Complaint, [R. 21], to add a complaint for declaratory relief as to claims by a third set of homeowners, Michael and Jennifer Castle, this Court has not ruled on whether AO & O satisfied their burden under the relevant federal rules for amendment.

underlying proceedings are at different stages, there are multiple policies at issue with varying terms and coverages, and there is at least some potential for factual differences affecting the coverage issue. Further, the remedy of filing an indemnity action (or declaratory judgment action) is not a less attractive alternative, especially with respect to the Knights. The arbitration proceeding has resolved, and Bourbon Circuit Court entered an Order Confirming Arbitration Award and Judgment. [R. 36-1, Ex. A]. The Knights' claims are "already past the liability stage following numerous motion hearings and rulings from state court." [R. 36, p. 2]. Intervening in the Bourbon Circuit matter, or filing a separate indemnity or declaratory judgment action, would be no less efficient (indeed would be more efficient), than filing a declaratory judgment action in federal court. Concerning the Simpsons and the Knights, AO & O have the same remedy available in state court, but with the benefit of state court applying state law.

Lastly, the Court "has no reason to believe that [AO & O's] interest would not be adequately protected in a state court declaratory action or that the state court is not in a position to 'define its own law in a fair and impartial manner.'" *Bituminous*, 373 F.3d at 816–17 (quoting *Am. Home Assur. Co. v. Evans*, 791 F.2d 61, 63 (6th Cir. 1986)); [R. 34, pp. 5-6].

For these reasons, the Court finds that a declaratory action in the state court is a better remedy than this federal declaratory action. Thus, the final factor weighs against exercising jurisdiction.

### E.  Balancing the Factors

The Sixth Circuit has yet to offer guidance on the relative weight of each *Grand Trunk* factor but has acknowledged that the factors are not always equal. *See Flowers*, 513 F.3d at 563; *Hoey*, 773 F.3d at 759. Previously, the Eastern District of Kentucky has stated that "[t]he most important consideration in exercising this discretion [under the Declaratory Judgment Act] is

whether retaining jurisdiction interferes with state-court litigation." *Abundance Coal*, 2012 WL 3067579, at *2. Notwithstanding, the Sixth Circuit has also noted that "[t]he relative weight of the underlying considerations of efficiency, fairness, and federalism will depend on [the] facts of the case." *Hoey*, 773 F.3d at 759. Accordingly, the Court must balance the *Grand Trunk* factors on a case-by-case basis. In doing so, the Court is afforded "unique and substantial" discretion. *Wilton*, 515 U.S. at 286.

Here, while it is true that *Grand Trunk* factors one and two slightly favor exercising jurisdiction, factors four and five equally favor declining jurisdiction. Factor three—whether the declaratory plaintiff is engaging in procedural fencing—is neutral. Further, the considerations of efficiency, fairness, and federalism tilt in favor of declining jurisdiction. First, while it may be more efficient from AO & O's vantage point to settle the coverage dispute in one single, federal forum, the state courts are "positioned to decide every issue amongst all the parties in this matter, allowing the parties to fight this battle on a single front." *Grange,* 565 F. Supp. 2d at 791. Even if a separate declaratory judgment action or indemnity action must be filed in state court, it places AO & O in no worse position than filing a declaratory judgment action in this case, especially given the procedural posture of the state-court matters. Furthermore, it would be more efficient for the state courts to handle this matter given the state courts' unique ability to apply state law, a point amplified considering how closely the interpretation of insurance contracts is entwined with state public policy. *Frankenmuth*, 510 F. Supp.3d at 500; *see also United Specialty*, 936 F.3d at 401. Finally, an ongoing federal declaratory action could certainly create delays in the state court proceeding, or confusion as to scheduling, discovery, and other matters, especially given the two state actions are at varying litigation stages. *See Frankemuth*, 510 F. Supp.3d at

502. Thus, even though the Court can address state law matters, the nature of the issues suggests it would be more efficient if handled by the state courts.

Second, the fairness factor favors declining jurisdiction. AO & O fear having to file several lawsuits in multiple state courts (actually, potentially two), but by filing this action, AO & O force the Homeowners to engage in litigation on two fronts "to receive a simple declaration of rights under an insurance contract—a matter that could easily be handled by the state courts that are more familiar with Kentucky insurance law in the first place." *Grange*, 565 F. Supp.2d at 791.

Finally, considerations of federalism favor state courts handling matters intimate to the state. Were this Court to exercise jurisdiction, it would deprive a state court of the opportunity to interpret and apply its own law. *See Frankenmuth*, 510 F. Supp.3d at 502. Considering the issue is not one of federal law but rather state-regulated insurance contracts, the consideration of federalism moves this Court to decline exercising jurisdiction.

Thus, the Court has taken a "good look" at the relevant issues and, having considered each *Grand Trunk* factor and the underlying considerations of efficiency, fairness, and federalism, the Court declines to exercise discretionary jurisdiction.

## IV.    CONCLUSION

Accordingly, and the Court being otherwise sufficiently advised, **IT IS HEREBY ORDERED** as follows:

1) The Court declines to exercise its discretion under the Declaratory Judgment Act, 28 U.S.C. § 2201, and this matter is **DISMISSED WITHOUT PREJUDICE**. The Clerk of Court shall **STRIKE** this case from the Court's active docket.

This the 2nd day of May 2022.

*Claria Horn Boom*

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY